UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARK NORTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:09 CV 1644 RWS / DDN |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Mark Norton for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401-34, and §§ 1381-1383f, respectively. The action was referred to the undersigned United States Magistrate Judge for review and a recommended disposition under 28 U.S.C. § 636(b). For the reasons set forth below, the undersigned recommends that the ALJ's decision be affirmed.

**I.  BACKGROUND**

On October 29, 1998, plaintiff Mark Norton was awarded disability insurance benefits (DIB) and Supplemental Security Income (SSI), with an established onset date of August 10, 1997. (Tr. 9.) Plaintiff alleged disability due to anxiety, panic attacks, and inability to cope with stress. (Tr. 623.) A continuing disability review (CDR) was conducted and the Commissioner determined that plaintiff would be terminated from benefits as of December 15, 2005. (Tr. 44.) Plaintiff appealed, and the cessation was affirmed on reconsideration. (Tr. 29.)

On March 27, 2007, following a hearing, an Administrative Law Judge (ALJ) found that plaintiff was not disabled under the Act. (Tr. 6.) On July 30, 2009, the Appeals Council denied his request for review.

(Tr. 2.) Therefore, plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner.

## II. MEDICAL AND OTHER HISTORY

From September 15, 2003, to November 17, 2006, plaintiff was treated by psychiatrist William Wang, M.D., Ph.D. (Tr. 280, 285-312.) During that time, Dr. Wang diagnosed plaintiff with bipolar affective disorder,[1] alcohol abuse, and asthma. (Tr. 280, 285, 286-A, 288, 289, 291, 293, 296, 298, 300, 301, 304, 306, 308, 309, 312.)

From June 19-23, 2003, plaintiff was hospitalized at St. Joseph Health Center (St. Joseph's) for depression and violent thoughts. (Tr. 443-452.) He complained of agitation and homicidal thoughts. (Tr. 445.) Dr. Wang observed that plaintiff had been previously diagnosed with schizophrenia, but was more recently diagnosed with psychotic symptoms instead. Dr. Wang noted plaintiff was intoxicated. (Tr. 445.) Plaintiff told Dr. Wang that he had not taken his medication for six months and drank each day. (Tr. 445.) His GAF score was 30[2] at admission. Four days later, Dr. Wang noted that plaintiff's mood had improved after detoxification and anti-psychotic medication. (Tr. 444.) Dr. Wang's diagnoses at discharge included alcohol dependence and bipolar disorder. His GAF score was 60[3] at discharge. (Tr. 444, 445.)

---

[1]Bipolar disorder is an affective disorder characterized by the occurrence of alternating manic, hypomanic, or mixed episodes and with major depressive episodes. Stedman's Medical Dictionary 568 (28th ed. 2006).

[2]On the GAF scale, a score from 21 to 30 represents behavior that is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (such as incoherency, acting grossly inappropriately, preoccupation with suicide), or an inability to function in almost all areas (for example, staying in bed all day, or having no job, home, or friends). American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 32-34 (4th ed. 2000).

[3]On the GAF scale, a score from 51 to 60 represents moderate symptoms (such as flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or
(continued...)

From August 7-11, 2003, plaintiff was hospitalized at St. Joseph's for psychiatric stabilization for noncompliance with medication and agitation. (Tr. 430-442.) Plaintiff stated he drank about twelve beers per day and was not taking medication. Dr. Wang's diagnoses at discharge included alcohol dependence and bipolar disorder not otherwise specified. His GAF score was 30 at admission and 55 at discharge. (Tr. 431, 432.) From September 5-8, 2003, plaintiff was hospitalized at St. Joseph's for auditory hallucinations telling him to hurt himself. (Tr. 418-429.) His GAF score was 30 at admission. Dr. Wang's diagnoses at discharge included psychotic disorder[4] and alcohol dependence. Dr. Wang noted that plaintiff had received an increased dosage of anti-psychotic medication during treatment and had promised to attend Alcoholics Anonymous. (Tr. 49.) Dr. Wang noted that plaintiff no longer heard voices, and had no suicidal or homicidal ideation. (Tr. 419.) Plaintiff's GAF score was 55 at discharge. (Tr. 419.)

Dr. Wang saw plaintiff for follow-up on September 15, 2003, noting that plaintiff was in a good mood and denied suicidal or homicidal thoughts. (Tr. 309-312.)

From October 19-23, 2003, plaintiff was admitted to St. Joseph's for worsening psychotic behavior. (Tr. 412-417.) His GAF score was 30 at admission. Dr. Wang noted that plaintiff had a history of auditory hallucinations that were sometimes associated with alcohol use and observed that plaintiff was "obviously" not sober at that time. (Tr. 414.) His discharge diagnoses included psychotic disorder not otherwise specified and alcohol dependence. His GAF score was 50 at discharge. (Tr. 413, 414.)

---

[3](...continued)
school functioning (such as few friends, conflicts with peers or co-workers). DSM-IV at 32-34.

[4]A mental and behavioral disorder causing gross distortion or disorganization of a person's mental capacity, affective response, and capacity to recognize reality, communicate, and relate to others the degree of interfering with the person's capacity to cope with ordinary demands of daily life. Stedman's at 1597.

From March through October 2004, Dr. Wang saw plaintiff four times. (Tr. 301-02, 303-04, 305-06, 307-08.) Dr. Wang assigned GAF scores of 50 at his first two appointments, and a score of 55 at the third. (Tr. 304, 306, 308.) During the fourth appointment, plaintiff informed Dr. Wang that he was responding well to treatment, but still experienced anxiety, mood swings, and depression. (Tr. 302.)

From November 20-23, 2004, plaintiff was involuntarily admitted to St. Joseph's for increased irritability and fighting with a neighbor. (Tr. 403-11.) He stated that he drank a large amount of vodka the previous day. (Tr. 405.) Diagnoses at discharge were bipolar affective disorder and alcohol abuse. His GAF score was 45[5] at discharge. (Tr. 404.)

During a December 6, 2004 follow-up session with Dr. Wang, plaintiff complained of stress and anxiety. (Tr. 299.) Plaintiff stated that he drank two twelve-packs of beer per week and was on probation for sexual assault. (Tr. 299.) Dr. Wang assigned a GAF score of 55. (Tr. 300.) On January 6, 2005, plaintiff informed Dr. Wang that he was experiencing diarrhea, "the shakes," insomnia, and increased anxiety and depression. (Tr. 290.)

From March 28-30, 2005, plaintiff was admitted to St. Joseph's for depression. (Tr. 389-396.) He reported that he had been binge drinking for the past month. (Tr. 391.) Dr. Wang noted that his mood and behavioral issues were often "convoluted with alcoholism." (Tr. 391.) He also noted that plaintiff lived with his wife and one-year-old son, and worked at a fast-food restaurant. (Tr. 393.) He assigned a GAF score of 30. (Tr. 392.) Dr. Wang noted that plaintiff's regime of anti-psychotic and anxiety medication had worked relatively well prior to his current episode. (Tr. 391.) Dr. Wang's diagnoses at discharge were mood disorder associated with alcoholism and alcohol dependence,

---

[5]On the GAF scale, a score from 41 to 50 represents serious symptoms (such as thoughts of suicide, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (such as the inability to make friends or keep a job). DSM-IV at 32-34.

and antisocial personality disorder.[6]  His GAF score was 50 at discharge.  (Tr. 390, 392.)

On July 18, 2005, plaintiff reported to Dr. Wang that his current response to treatment was "good."  (Tr. 294.)  Dr. Wang assigned a GAF score of 55.  (Tr. 293.)

From October 6-9, 2005, plaintiff was admitted to St. Joseph's for anxiety and depression.  (Tr. 380-388.)  Plaintiff reported that he had not used medication for at least a week and had started drinking more.  (Tr. 383.)  Dr. Wang opined that plaintiff did not have typical bipolar disorder, but rather "alcohol exaggerated personality character."  (Tr. 383.)  Dr. Wang noted that plaintiff stated he would attend daily group therapy.  (Tr. 384.)  His discharge diagnoses were unspecified mood disorder, alcohol dependence, and antisocial personality disorder.  His GAF score was 30 at admission and 50 at discharge.  (Tr. 381, 383.)

During a follow-up session on November 3, 2005, plaintiff informed Dr. Wang that he was not drinking.  (Tr. 292.)  Dr. Wang assessed his GAF score at 55.  (Tr. 291.)  On March 3, 2006, plaintiff reported to Dr. Wang that he felt better, but had experienced weight gain, anxiety, and depression.  (Tr. 287.)  He also stated he was studying accounting.  (Tr. 287.)

From May 13 to 17, 2006, plaintiff was hospitalized at St. Joseph's after getting into a fight and threatening physical harm.  (Tr. 349-79.)  Plaintiff stated that he stopped taking his medication for three days, began drinking, and had a fight with his sister's boyfriend.  (Tr. 353.)  Plaintiff claimed he stopped taking his medication because it made him fat.  (Tr. 357.)  His GAF score was 30 upon admission. (Tr. 353.)  Dr. Wang's discharge diagnoses included bipolar disorder, with his most recent episode being depressed, and alcohol abuse.  His GAF score was 50 at discharge.  (Tr. 352-53.)

On June 4, 2006, plaintiff was admitted to St. Joseph's for worsening depressive symptoms after first being seen at DePaul Health

---

[6]An enduring and pervasive pattern characterized by continuous and chronic antisocial behavior with disregard for and violation of the rights and safety of others, beginning before the age of 15.  Stedman's at 567.

-5-

Center. (Tr. 323-330, 332-345.) Plaintiff stated he drank each day and had consumed a case of beer prior to admission. (Tr. 333.) Tests showed his medication level was below the therapeutic range. (Tr. 343.) His admission diagnosis was bipolar disorder, depressed; alcohol abuse; and social anxiety disorder. His GAF score at admission was 30. He was instructed not to drink, particularly while on medication, and released two days later. (Tr. 327, 329.)

On June 26, 2006, plaintiff reported to Dr. Wang that his response to medication and treatment was "good." (Tr. 286.) Dr. Wang assessed a GAF score of 55. (Tr. 286A.)

Police transported plaintiff to the Metropolitan St. Louis Psychiatric Center for treatment on September 27, 2006 after plaintiff reported drinking a twelve-pack of beer and having suicidal thoughts. (Tr. 256-59.) He expressed frustration that he did not "feel like the man of the house" and was unable to find work because he was a registered sex offender. (Tr. 257.) He was diagnosed with intoxication and alcohol-induced mood disorder, and assigned a GAF score of 35–40. (Tr. 259.)

Plaintiff was admitted to St. Joseph's from October 11-14, 2006, with paranoid thoughts that his wife was cheating on him and that he wanted to hurt her. (Tr. 314-16.) Plaintiff stated that the devil told him to kill others. (Tr. 315.) He also stated that he drank a case of beer in the 24 hours prior to admission. (Tr. 315.) His GAF score was 30 at admission. He received individual and group counseling for anger management and behavior modification. Saaid Khojasteh, M.D., diagnosed bipolar affective disorder with psychosis and alcohol abuse. Dr. Khojasteh discharged him three days later, assigning him a GAF score of 52 at discharge. (Tr. 315.)

On October 26, 2006, Dr. Wang completed a Mental Medical Source Statement (MMSS). (Tr. 281-284.) Dr. Wang opined that plaintiff had "extreme" limitations in his ability to cope with normal work stress. He opined plaintiff had "marked" limitations in his ability to behave in an emotionally stable manner, maintain reliability, and respond to changes in a work setting. He opined plaintiff had "moderate" limitations in all other areas, including his ability to function

independently; relate in social situations; interact with the general public; accept instructions and respond to criticism; maintain socially acceptable behavior; make simple work-related decisions; maintain regular attendance and be punctual; complete a normal workday and workweek without interruptions from symptoms; maintain concentration and attention for extended periods; perform at a consistent pace without an unreasonable number and length of rest periods; sustain an ordinary routine without special supervision; and work in coordination with others. (Tr. 282-83.)

In his MMSS, Dr. Wang further stated that plaintiff had suffered four or more episodes of decompensation in the last year. (Tr. 283.) He stated that plaintiff's condition had been chronic since his teen years. (Tr. 284.) His most current diagnoses were bipolar affective disorder, alcohol abuse in remission, and adult antisocial behavior. He stated his most recent GAF score was 55, and that his GAF scores had ranged from 30 to 55 in the past year. (Id.)

From January 6-8, 2007, plaintiff was admitted to St. Joseph's after fighting with his mother and having suicidal thoughts. (Tr. 261-70.) He told Dr. Wang that he was anxious about a job interview at a fast-food restaurant and was having panic attacks. (Tr. 262.) Dr. Wang opined that plaintiff's continued alcohol use might play a role in his behavior. (Tr. 262.) Dr. Wang noted that plaintiff responded well to an anti-psychotic medication, but found it too sedating. (Tr. 263.) He diagnosed bipolar disorder, history of alcohol abuse, and antisocial personality disorder, and assigned a GAF score of 45. (Tr. 263.)

**Testimony at the Hearing**

Plaintiff appeared and testified at a hearing held before an ALJ on February 26, 2007. (Tr. 617-32.) He was 27 years old at the time and has a GED. (Tr. 617, 621.) Plaintiff testified that he had been in jail five or more times, but never in prison. He testified that he had one DUI that was reduced to being careless and imprudent because he was below the legal limit; he had been through detox or rehabilitation

programs 10 to 15 times; and had been hospitalized for alcohol and/or drugs close to 15 to 20 times. (Tr. 622-23.)

Plaintiff testified that he could not handle the stress of working full-time, that he had anxiety and panic attacks around a lot of people; and that it was hard for him to complete tasks at a high rate of speed. (Tr. 623.) He testified that having to complete tasks within a certain time frame and having to follow sometimes complicated directions caused him stress. (Id.) He testified that he had experienced anxiety every time he had tried to work. (Tr. 624.) He testified that he was fired from a job at a pizza parlor after one week or less because he could not handle the telephone at a rate the employer wanted. (Id.)

Plaintiff testified that he was being treated by Dr. Wang and was receiving counseling from a social worker. (Tr. 626.) Plaintiff testified that he believed his mental impairment was separate from his alcohol and drug problems. (Tr. 626-27.) He testified that Dr. Wang had instructed him not to drink while on medication. (Tr. 627.) He testified that he had remained sober for approximately two years, but could not remember when that was. (Id.) Plaintiff described what a panic attack felt like, and testified that he experienced feelings of panic or anxiety at least once or twice a day, and which lasted 30 minutes to an hour. (Id.) He testified that he had informed Dr. Wang about his panic attacks. (Tr. 627-28.) Plaintiff testified that he lacked social activities. He testified regarding his daily activities, which included reading, attempting to write, watching TV, and attending church. He was able to drive. (Tr. 630-631.)

### III. DECISION OF THE ALJ

On March 27, 2007, the ALJ entered an unfavorable decision. (Tr. 9-17.) At Step One, the ALJ determined that plaintiff had not engaged in substantial gainful activity since at least August 10, 1997. (Tr. 11.) At Step Two, the ALJ found that plaintiff had bipolar disorder, alcohol abuse, and antisocial personality disorder. (Id.) The ALJ did not explicitly state these impairments were severe, but in her decision appears to have treated them as if they were. At Step Three, the ALJ found that plaintiff does not suffer from an impairment or combination

-8-

of impairments of a severity that meets or medically equals the required severity of a listing. (Id.)

The ALJ further found that plaintiff had experienced medical improvement since the last favorable medical determination. (Tr. 16.) The ALJ found that the "[e]vidence demonstrates that any diminution in [plaintiff's] ability to engage in sustained work activity directly relates to his failure to follow prescribed treatment." (Id.) The ALJ found that the exception to medical improvement listed under 20 C.F.R. § 404.1594(e)(4) applied to plaintiff's case. (Id.) The ALJ found that plaintiff's disability had ceased on December 15, 2005. (Id.)

### IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's final decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and is supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity in the national economy due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d 935, 942 (8th Cir. 2009). A five-step regulatory framework is used to determine whether an individual qualifies for disability. 20 C.F.R. §§ 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42

-9-

(1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. Pate-Fires, 564 F.3d at 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Id. Step Four requires the Commissioner to consider whether the claimant retains the residual functional capacity (RFC) to perform his past relevant work (PRW). Id. The claimant bears the burden of demonstrating he is no longer able to return to his PRW. Id. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work. Id.

## V.  DISCUSSION

Plaintiff argues the ALJ erred in (1) failing to establish that his medical improvement was related to his ability to work; and (2) failing to establish that he was noncompliant with prescribed treatment which would be expected to restore his ability to engage in substantial gainful activity; and (3) giving no weight to the opinion of Dr. Wang, his treating psychiatrist.

### A.  § 404.1594(a) Medical Improvement as Related to Ability to Work

Plaintiff argues the ALJ erred in failing to establish that his medical improvement was related to his ability to work as required under § 404.1594(a). The ALJ found that plaintiff was not disabled from December 15, 2005 onward because he did not follow prescribed treatment that would be expected to restore his ability to work. (Tr. 16.)

Plaintiff argues that the ALJ erred in failing to determine his current RFC. He argues that although the ALJ found that there had been medical improvement in that plaintiff no longer carried a diagnosis of paranoid schizophrenia, without determining his RFC, the ALJ did not satisfy the regulatory requirement to compare his current RFC to his RFC

at the time of the most recent favorable decision. He argues that therefore the ALJ could not properly determine whether his purported medical improvement was related to his ability to do work, as required by 20 C.F.R. § 404.1594(a).

Some of the exceptions to medical improvement that the ALJ may consider at Step Five of the sequential evaluation permit a determination that disability has ceased without regard to whether "[the claimant has] medically improved or can engage in substantial gainful activity." One such exception permits the ALJ to terminate benefits if the claimant "fail[s] to follow prescribed treatment which would be expected to restore [his] ability to engage in substantial gainful activity." See 20 C.F.R. §§ 404.1594(e)(4), 416.994(e)(4) (citing 20 C.F.R. §§ 404.1530(c), 416.930(c)).

The ALJ found that plaintiff experienced medical improvement, specifically that plaintiff no longer carried a diagnosis of schizophrenia. (Tr. 15, 445.) However, the ALJ found that plaintiff's benefits ceased because he failed to follow treatment that would be expected to restore his ability to work. (Tr. 16.) The ALJ's determination did not depend on the claimant's RFC, because this exception applied regardless of whether plaintiff had medically improved or could perform substantial gainful activity. See 20 C.F.R. §§ 404.1594(e), 416.994(e) (2009).

**B.  Failure to Follow Prescribed Treatment**

Plaintiff also argues that the evidence does not support the ALJ's finding that any failure to follow prescribed treatment would be expected to restore his ability to work. However, plaintiff's noncompliance was not limited to his failure with respect to his medication. The ALJ also cited plaintiff's "apparent failure to comply with advice to stop drinking." (Tr. 15.) The record provides support for the ALJ's finding that compliance with these facets of treatment would be expected to restore plaintiff's ability to work.

Specifically, the ALJ noted that all of plaintiff's hospitalizations were occasioned by his failure to take medication and abstain from alcohol. (Tr. 15.) The record evidence shows plaintiff

-11-

drank alcohol prior to each of his hospitalizations.  Non-compliance with medication was also noted during most of these hospitalizations. As plaintiff's hospitalizations coincided with recent alcohol use and, for the most part, noncompliance with medication, the ALJ could conclude that plaintiff would not require hospitalization if he abstained from alcohol and was complaint with medication.

The ALJ also found that plaintiff quickly stabilized shortly after being admitted to the hospital. (Tr. 15.)  The record evidence shows plaintiff usually had GAF scores of 30 upon admission, which rose to 50 to 55 within a few days of treatment.  The ALJ also observed that plaintiff's prescribed course of treatment was effective when plaintiff was compliant on his own. (Tr. 15.)  During regular office visits not occasioned by hospitalizations, Dr. Wang typically assigned GAF scores of 55.  (Tr. 284, 286A, 291, 293, 300, 304.)  Such a score is appropriate for a person who experiences some work limitations, not a person who is unable to work.  See Halverson v. Astrue, 600 F.3d 922, 930-31 (8th Cir. 2010) (ALJ could rely in part on GAF scores "between 52 and 60" in discounting reports that suggested the claimant "would be unable to maintain consistent employment").

Another factor influencing the ALJ's conclusion that plaintiff could likely work if he complied with treatment was plaintiff's statement to an examiner that he was unable to find work for a non-medical reason, i.e., because he was a registered sex offender. (Tr. 257.)  The ALJ noted that plaintiff's statement seemed to imply that without a criminal record, plaintiff would be able to find work. (Tr. 15.)

Finally, plaintiff argues the ALJ should have considered his reasons for his noncompliance.  Failure to follow prescribed treatment will not justify termination of benefits if the claimant has "good reason for not following treatment."  See 20 C.F.R. §§ 404.1530(c), 416.930(c).  After reviewing the record evidence, the ALJ found no "good cause" for plaintiff's failure to follow prescribed treatment. (Tr. 16.)  Although plaintiff argues that some mental impairments can cause a claimant not to appreciate the need for medication compliance, he has provided no evidence to support the inference that he did not

-12-

appreciate the need for compliance. As plaintiff failed to follow prescribed treatment that would be expected to restore his ability to work, the undersigned concludes that the ALJ lawfully found that his disability ceased. See 20 C.F.R. §§ 404.1594(e)(4), 416.994(b)(4)(iv).

Accordingly, for these reasons, the ALJ lawfully concluded plaintiff would likely be able to work if he abstained from alcohol and was compliant with medication.

**C.   Treating Physician Dr. Wang's Opinion**

Plaintiff also argues the ALJ erred in giving no weight to the opinion of Dr. Wang in his October 26, 2006 MMSS. The ALJ assigned no weight to Dr. Wang's MMSS. (Tr. 15.) In support, the ALJ stated that Dr. Wang's assessment was "inconsistent with other opinion (sic), including some of his own observations." (Id.) The ALJ also found Dr. Wang's estimate of a GAF score of 55 was consistent with moderate, not marked, limitation of functioning. The ALJ also noted that plaintiff's part-time work history belied Dr. Wang's assessment of an extreme limitation in plaintiff's ability to cope with normal work stress, and that it was unclear whether Dr. Wang's assessment was based on plaintiff's intermittent alcohol abuse, his mental limitations, or a combination of the two. The ALJ also noted Dr. Wang's comments at other times suggested that he believed plaintiff's limitations from alcohol abuse might have superseded any limitations relating to his mental impairment. Finally, she noted Dr. Wang's observation during plaintiff's October 2005 hospitalization that plaintiff's pattern was "not typical bipolar disorder, rather alcohol exaggerated personality disorder." (Id.)

The ALJ is required to assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record. 20 C.F.R. § 404.1527(d)(2). A treating physician's opinion is generally given controlling weight, but is not inherently entitled to it. Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006). See 20 C.F.R. § 404.1527(d)(2). An ALJ may elect under certain circumstances not to give controlling weight to treating doctors' opinions. A physician's statement that is not supported by

-13-

diagnoses based on objective evidence will not support a finding of disability. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight. Id.; see also Hacker, 459 F.3d at 937; 20 C.F.R. § 404.1527(d)(2). It is the ALJ's duty to resolve conflicts in the evidence. See Hacker, 459 F.3d at 936.

Plaintiff argues the ALJ erred in failing to state what "other opinion" is inconsistent with Dr. Wang's opinion, or to explain why such "other opinion" should be given precedence over Dr. Wang. Plaintiff argues that if the ALJ considered a GAF score of 55 as a reason not to give weight to Dr. Wang's opinions, then the ALJ should have considered plaintiff's multiple GAF scores of 50 or below. Plaintiff further argues the ALJ erred in failing to explain what part-time work history belied Dr. Wang's assessment of extreme limitation in plaintiff's ability to cope with normal work stress. He argues the ALJ erred in failing to recontact Dr. Wang in order to clarify whether his opinions were based on plaintiff's mental limitations, his alcohol abuse, or both. Finally, he argues the ALJ erred in failing to follow the requirements of 20 C.F.R. § 404.1527(d).

The undersigned concludes the ALJ gave good reasons for discounting Dr. Wang's opinion in his October 26, 2006 MMSS. Section 404.1527(d) does not require the ALJ to document consideration of those factors as suggested by plaintiff. Rather, the ALJ must provide "good reasons" to explain the weight she assigns a treating physician's evaluation. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d).

The ALJ explained that she discounted Dr. Wang's assessment, in part, because it was inconsistent with his treatment findings. (Tr. 15.) See Samons v. Astrue, 497 F.3d 813, 819 (8th Cir. 2007) (ALJ could discount a treating opinion in part because it was inconsistent with treatment records). The ALJ here observed that Dr. Wang assigned plaintiff some "marked" or "extreme" limitations in his MMSS, yet estimated his GAF score at 55, which is consistent with only "moderate" limitations. (Tr. 15.) See DSM-IV-TR 34. This discrepancy suggests Dr. Wang assessed greater limitations than he observed during treatment.

Plaintiff notes that he received GAF scores of 30, 35, and 50 at times. However, Dr. Wang estimated plaintiff's GAF score at 55 at the time he completed the October 2006 assessment. Moreover, Dr. Wang consistently assigned this score during ordinary treatment sessions, with the exception of two early sessions in which he assigned scores of 50. (Tr. 284, 286A, 291, 293, 300, 304, 306, 308.) Plaintiff only received GAF scores of 30 at the time of hospitalization admissions, all of which were precipitated by alcohol abuse and noncompliance with medication. Therefore, the lower GAF scores are not representative of plaintiff's functioning when he is compliant. (Tr. 329, 353, 383, 392, 414, 420, 432, 445.)

Plaintiff also argues that Dr. Wang's MMSS was consistent with his GAF score of 55, as Dr. Wang mostly assessed moderate limitations. However, Dr. Wang opined that plaintiff had extreme limitations in one area, coping with normal work stress. He opined that plaintiff had marked limitations in three areas (1) behaving in an emotionally stable manner; (2) maintaining reliability; and (3) responding to workplace changes. (Tr. 281, 282.)

The ALJ observed that plaintiff's ability to perform part-time work was inconsistent with Dr. Wang's assessment of an "extreme" limitation in his ability to cope with normal work stress. Plaintiff reported that he worked sixteen to twenty-four hours per week at a fast-food restaurant in 2004 and 2005. (Tr. 214, 251.) Even assuming plaintiff received accommodations at work, his ability to work part-time suggests that he had some ability to cope with normal work stress. This is inconsistent with Dr. Wang's opinion concerning normal work stress. (Tr. 281, 282.)

The ALJ also stated it was unclear whether Dr. Wang assessed limitations based on plaintiff's mental impairment, his substance abuse, or both. (Tr. 15.) The ALJ stated that Dr. Wang seemed to believe at times that plaintiff's limitations arose from his alcohol use rather than a mental impairment. (Tr. 15.) In particular, the ALJ noted Dr. Wang's October 2005 remark that plaintiff's behavioral pattern was typical of "alcohol exaggerated personality disorder," rather than bipolar disorder. (Tr. 383.) Dr. Wang also remarked on a connection

between alcohol abuse and behavioral problems at other times, noting that plaintiff's psychotic symptoms were "probably associated with alcoholism," that plaintiff's "mood and behavior problems often were convoluted with alcoholism," and that plaintiff's alcohol abuse might "play a role in his behavior." (Tr. 391, 419, 262.) As Dr. Wang did not believe that plaintiff's limitations were independent of alcohol abuse, the ALJ could conclude that Dr. Wang's assessment reflected alcohol-related limitations.

Plaintiff next argues that the ALJ should have recontacted Dr. Wang to clarify his opinion. However, the ALJ had already established that Dr. Wang's opinion was contradictory. Once an ALJ concludes based on legally sufficient evidence that a treating physician's opinion is "inherently contradictory or unreliable," she is not generally required to seek more information from that physician. See Samons, 497 F.3d at 819. As the ALJ determined that Dr. Wang's opinion conflicted with his GAF assessments and plaintiff's part time employment, the ALJ did not require further information to clarify his opinion.

The undersigned also disagrees with plaintiff's assertion that the ALJ ignored Dr. Wang's office and hospital treatment notes. Although the ALJ assigned no weight to Dr. Wang's October 2006 MMSS, she relied on his treatment notes and GAF assessments in evaluating plaintiff's functioning. (Tr. 12–16.) For example, Dr. Wang's assessment of moderate limitations during treatment supported the ALJ's view that plaintiff would likely be capable of work if he was compliant with treatment. (Tr. 284, 286A, 291, 293, 300, 304.) Dr. Wang's observations also provided support for the ALJ's conclusion that plaintiff's hospitalizations were precipitated by his noncompliance with medication and alcohol use. (Tr. 15.)

The ALJ had good reason to discount Dr. Wang's October 2006 MMSS, as it conflicted with his other GAF assessments as well as plaintiff's employment. The undersigned concludes substantial evidence supports the ALJ's decision not to rely on this opinion.

## VI.  RECOMMENDATION

For the reasons set forth above, it is the recommendation of the undersigned that the final decision of the Commissioner of Social Security be affirmed under Sentence 4 of 42 U.S.C. § 405(g).

The parties are advised that they have 14 days to file documentary objections to this Report and Recommendation.  The failure to file timely documentary objections may waive the right to appeal issues of fact.


    /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**


Signed on September 7, 2010.